IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BIRD REALTY LIMITED PARTNERSHIP,<br>    *Plaintiff*,<br><br>    v.<br><br>JIFFY LUBE INTERNATIONAL, INC.<br>    *Defendant*. | Civil Action No. ELH-12-1104 |

**MEMORANDUM OPINION**

This case arises out of the termination of a multi-tiered real estate lease involving Bird Realty Limited Partnership ("Bird Realty" or "Bird") and Jiffy Lube International ("JLI" or "Jiffy Lube"), under which Jiffy Lube, as a successor-in-interest, served as both the lessor to Bird of real property located in Anne Arundel County, and the sublessee of that property from Bird. Bird filed suit against defendant in the Circuit Court for Anne Arundel County, Maryland (ECF 2), asserting four claims: Jiffy Lube, as a tenant, breached its contractual obligations by failing to pay all rent due under the lease, Compl. ¶¶ 16-21; Jiffy Lube, as lessor, is liable for breach of the lease agreement, *id.* ¶¶ 20-21; Jiffy Lube engaged in tortious interference of prospective economic advantage, *id.* ¶¶ 24-25; and Jiffy Lube breached its fiduciary duty to Bird. *Id.* ¶¶ 27-28. The case was subsequently removed to this Court.[1] *See* Notice of Removal (ECF 1).

Thereafter, Jiffy Lube moved to dismiss for failure to state a claim("Motion") (ECF 14), pursuant to Fed. R. Civ. P 12(b)(6), supported by a memorandum of law. ("Memo") (ECF 14-1).

---

[1] This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), and removal was proper under 28 U.S.C. § 1441.

The Motion has been fully briefed[2] and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons set forth below, I will grant the Motion, with leave to amend.

### Background[3]

On March 28, 1988, Jiffy Lube International of Maryland ("JLIM"), as tenant, entered into a lease agreement (the "Prime Lease") with Northway Limited Partnership ("Northway"), as owner, for a 22,575 square foot property located near the intersection of former Maryland Route 3, now Veterans Highway, and Old Mill Road in Anne Arundel County, Maryland (the "Property").  Compl. ¶ 5; *see* Prime Lease, Compl. Exh. A (ECF 2-1).  The Prime Lease provided for a twenty-year term, beginning on "the first month following the date Tenant opens for business," and terminating "twenty (20) years after the Rent Commencement Date unless sooner terminated in accordance with the provisions hereof."  *See* Prime Lease ¶ 4.A.  The "Rent Commencement Date" was defined in the Prime Lease as "the earlier to occur of (i) the date Tenant commences business operations at the Premises, or (ii) July 1, 1988."  *See* Prime Lease ¶ 1.F.  The Prime Lease further provided for two five-year extensions unless, at least six months prior to expiration of the Prime Lease, Jiffy Lube provided Northway with written notice of termination.  *Id.* ¶ 4.B.

On December 1, 1989, JLIM subleased the Property to Bird ("Sublease I").  Compl. ¶ 9; *see* Sublease I, Compl. Exh. B (ECF 2-1).  In many respects, the provisions of Sublease I mirrored those of the Prime Lease, a copy of which was attached to the sublease agreement.  *See* Sublease I ¶ 1(d).  The term of Sublease I was to begin on December 1, 1989, and extend until

---

[2] In response to the Motion, Bird filed an Opposition (ECF 15), to which Jiffy Lube replied (ECF 18).

[3] The facts are derived from the Complaint, and are construed in the light most favorable to the plaintiff.  *See Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"midnight on the day before the last day of the term of the Prime Lease or the earlier termination of the Prime Lease." *Id.* ¶ 2. Sublease I further provided that, if "the Prime Lease contains one or more renewal options," JLIM would exercise its option to renew "if requested in writing to do so by Tenant at least 30 days before the last day on which such renewal option may be exercised."[4] *Id.* ¶ 11.

That same day, Bird subleased the Property to J&R Lube ("J&R") ("Sublease II"), a Jiffy Lube franchisee, so that J&R could operate a "Jiffy Lube Service Center" on the premises. *See* Sublease II, Compl. Exh. C (ECF 2-1). The term of Sublease II was to be for "a period of twenty (20) years from the Lease Commencement Date, unless sooner terminated as herein provided or permitted." Sublease II ¶ 4 (term of lease). The "Lease Commencement Date" was defined as "the date on which the Leased Premises are ready for occupancy," *id.* ¶ 4, which Bird avers was during the month of December 1989. *See* Opp. at 2. Sublease II further provided for two five-year extensions, unless J&R otherwise notified Bird at least 180 days prior to the expiration of the term. Sublease II ¶ 6 (optional renewals).

On May 24, 1991, Jiffy Lube International of Tennessee ("JLIT") assumed the obligations of J&R under Sublease II. Compl. ¶ 13; *see* Compl. Exh. D (ECF 2-1). JLIT then merged with JLI, making Jiffy Lube the successor-in-interest to Sublease II. Compl. ¶ 13. JLIM also merged with JLI, making Jiffy Lube the successor-in-interest to the Prime Lease and Sublease I. Compl. ¶ 4; Memo at 2-3. As a result of the various leases, subleases, and mergers, the interest in the Property ran from Northway to Jiffy Lube (pursuant to the Prime Lease), from Jiffy Lube to Bird Realty (pursuant to Sublease I), and from Bird Realty back to Jiffy Lube (pursuant to Sublease II).

---

[4] At no point in the Complaint does Bird allege that such notice was provided, written or otherwise.

In a letter dated June 24, 2008, Jiffy Lube notified Northway (now AG/Spectrum Northway, L.L.C.) that it was not extending the Prime Lease beyond December 31, 2008. Compl. ¶ 20; Compl. Exh. E (ECF 2-1). For reasons not entirely clear from the record, notwithstanding Jiffy Lube's written termination of the Prime Lease, it continued to make rent payments to Bird through August 2009. *See* Compl. ¶ 6. Payments ceased in September 2009, and Bird subsequently filed suit.

## Standard of Review

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion under F.R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Twombly*, 550 U.S. at 554-55. Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (brackets in original) (internal quotation marks omitted). A complaint that provides no more

than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Id.* at 555.

Notably, the court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). However, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009). And, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

Typically, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear[] on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

In general, a court "is not to consider matters outside the pleadings . . . when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). But, there are some limited exceptions. For instance, the court may properly consider documents "attached

to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted). Here, I have considered the documents that Bird attached to the Complaint as ECF 2-1, including the Prime Lease, *see* Compl. Exh. A; Sublease I, Compl. Exh. B; Sublease II, Compl. Exh. C; and Jiffy Lube's notice to Northway terminating the Prime Lease, Compl. Exh. E.[5]

### Discussion

Bird contends that Jiffy Lube is liable in its capacity as both landlord and tenant. In Count I, Bird alleges that, as a tenant, Jiffy Lube wrongfully breached Sublease II and is liable for unpaid back rent in the post-September 2009 period, and is obligated to pay rent until expiration of the renewal of Sublease II, alleged to be December 31, 2014. Compl. ¶¶ 15-16. In Count II, Bird alleges that, as a landlord, Jiffy Lube breached the terms of Sublease I when it terminated the Prime Lease with Northway, thereby "prematurely" ending Bird's interest in the Property. Compl. ¶¶ 20-21. In Count III, Bird alleges that Jiffy Lube's termination of the Prime Lease precluded Bird from subleasing the Property to other parties, and therefore Jiffy Lube is liable for tortious interference with prospective economic advantage. Compl. ¶¶ 24-25. Finally, Bird alleges that Jiffy Lube's termination of the Prime Lease was in breach of a fiduciary duty it owed to Bird to extend the Prime Lease. Compl. ¶ 28 (Count IV). Maryland law governs each of Bird's claims.[6]

---

[5] A copy of the "Assignment and Assumption Agreement" between J&R Lube and Jiffy Lube was attached to the Complaint as Exhibit D, but the effect of that Agreement is not in dispute because the parties agree that Jiffy Lube is the successor in interest to J&R Lube for the purposes of Sublease II.

[6] As noted, jurisdiction is founded on diversity of citizenship. The Court is obligated to apply the choice-of-law rules of Maryland, the forum state. *See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Count I is premised on the alleged breach

*1. Claim for Rent*

Bird, as Jiffy Lube's landlord, claims that Jiffy Lube owes back rent under Sublease II. Sublease II was executed by the parties on December 1, 1989, to extend "for a period of twenty (20) years from the Lease Commencement Date," therein defined as "the date on which the Leased Premises are ready for occupancy." Sublease II ¶ 4. Bird alleges that because the Property was ready for occupancy in December 1989, Jiffy Lube was bound by the lease until December 2009. *See* Compl. ¶¶ 14-16; Opp. at 2. Bird further alleges that, under the automatic renewal provision of Sublease II, Jiffy Lube is obligated to pay rent on the Property until December 31, 2014. *See* Compl. ¶ 16.

This claim is without merit. As I shall explain, Bird's interest in the property under Sublease I expired with the termination of the Prime Lease, leaving Bird without a legal basis through which to recover additional rent payments from Jiffy Lube.

---

of Sublease II, which contains an express choice-of-law clause, stating: "This Lease shall be governed by the laws of the State in which the Lease Premises are located." *See* Sublease II ¶ 31. The Leased Premises are located in Maryland. Because Maryland courts generally recognize the parties' choice-of-law, Maryland law governs Count I. *See Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 336 Md. 606, 610, 650 A.2d 246, 248 (1994).

The remaining counts present claims in contract and tort, arising out of Sublease I. That lease does not contain an express choice-of-law provision. In contract cases, Maryland courts "apply the substantive law of the place where the contract was made." *See Cont'l Cas. Co. v. Kemper Ins. Co.*, 173 Md. App. 542, 548, 920 A.2d 66, 69 (2007). Although the record does not indicate where this contract was made, "[c]ontracts relating to the sale of realty are generally governed by the law of the jurisdiction in which the property is located," *Traylor v. Grafton*, 273 Md. 649, 660, 332 A.2d 651, 659 (1975). The same principle likely governs the lease of real property. *In re Merry-Go-Round Enters.*, 241 B.R. 124, 132 (Bankr. M.D. 1999) (applying law of jurisdiction where property was located for dispute concerning lease of real property). In tort cases, Maryland courts apply the law of the state where the injury occurred. *See Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Because the alleged injuries occurred in Maryland, the law of Maryland applies here.

By its terms, Sublease I was to "expire at midnight on the day before the last day of the term of the Prime Lease or the earlier termination of the Prime Lease." Sublease I ¶ 2. In turn, ¶ 4.A of the Prime Lease provided:

> The Term of this lease shall commence on the first month following the date Tenant opens for business and shall expire twenty (20) years after the Rent Commencement Date unless sooner terminated in accordance with the provisions hereof.

As alleged by Bird in the Complaint, Northway and Jiffy Lube terminated the Prime Lease on December 31, 2008. *See* Compl. ¶ 20; Notice Not to Exercise Renewal Option, Compl. Exh. E (ECF 2-1) ("Per the Sublease dated March 24, 1988 (the 'Lease') by and between [Northway] . . . and Jiffy Lube . . . the renewal option will not be exercised and the Lease will expire of its own accord on December 31, 2008 . . . ."). Therefore, notwithstanding Bird's allegations that it was entitled to rent through at least December of 2009, *see* Compl. ¶ 14, it is readily apparent that Bird's interest in the Property expired no later than midnight, December 30, 2008. *See* Sublease I, ¶ 2.

Bird argues that because J&R opened for business in December 1989, the initial twenty-year term of the Prime Lease commenced on January 1, 1990, and extended until December 31, 2009. ECF 15-1 at 2. However, the Prime Lease measured the twenty-year mark from the "Rent Commencement Date," not from "the date Tenant opens for business." And, the Rent Commencement Date was specifically defined in the Prime Lease as "the earlier to occur of (i) the date Tenant commences business operations at the Premises, *or* (ii) July 1, 1988." Prime Lease ¶ 1 (emphasis added). Because July 1, 1988, was the earlier of these two dates, it was also the Rent Commencement Date. It follows that the original twenty-year term, as provided under

the Prime Lease, would have expired on June 30, 2008, not December 31, 2009.[7]

It is well established that "[w]hen a prime lease is terminated (or otherwise fails) a sublease subordinate to the prime ordinarily terminates (or fails) . . . . [Thus] where a prime [lease] ends in accordance with its terms, express or implied, the sublease has to submit to the same fate." *Applebee's Ne., Inc. v. Methuen Investors, Inc.*, 709 N.E.2d 1143, 1145 (Mass. App. Ct. 1999); *see, e.g.*, *Glenn v. State Roads Comm'n of State Highway Admin.*, 33 Md. App. 476, 486-87, 365 A.2d 297, 304 (1976) (holding that subtenant's interest in property under sublease terminated with landlord's leasehold interest because "the possession of the tenant is the possession of the landlord."); *In re Policy Realty Corp.*, 242 B.R. 121, 128 (Bankr. S.D.N.Y. 1999) ("[W]hen a prime lease is terminated by operation of its stated terms, the rights of any subtenants of the prime tenant also terminate."), *aff'd* 213 F.3d 626 (2d Cir. 2000); *Sanchez v. Eleven Fourteen, Inc.*, 623 A.2d 1179, 1181 (D.C. 1993) ("It is, of course, fundamental that the rights of a subtenant can, with at least one limited exception to be mentioned, rise no higher than those of his sublessor."); *In re Royal Yarn Dyeing Corp.*, 114 B.R. 852, 856 (Bankr. E.D.N.Y.

---

[7] Jiffy Lube argues that, due to a subsequent modification, the Prime Lease did not expire until December 31, 2008. In support of this assertion, Jiffy Lube proffers a number of documents, including various agreements, letters, and "Estoppel Certificates," all of which treat December 31, 2008, as the termination date for the Prime Lease. *See* Reply Exhs. A-E (ECF 18). However, as a general rule, a motion to dismiss submitted under Fed. R. Civ. P. 12(b)(6) is evaluated by reference to the complaint and exhibits that are attached or incorporated, but without regard to extrinsic evidence. *See E.I. du Pont*, 637 F.3d at 448. Under the Federal Rules of Civil Procedure, consideration of extrinsic materials converts a motion to dismiss to a motion for summary judgment, and requires that a district court offer all parties a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see E.I. du Pont*, 637 F.3d at 448-49.

None of the materials that Jiffy Lube offers in its Reply are attached or incorporated into the Complaint. Therefore, they have not been considered. I note, however, that consideration of those documents would not alter the substantive outcome of the case, because they merely reinforce Bird's allegations that, by letter, Northway and Jiffy Lube agreed that the Prime Lease was to expire on December 31, 2008.

1990) ("[W]here a subtenant occupies the premises, under New York Law the valid termination of the prime lease will automatically terminate a sublease which is subject and subordinate to it."). *Cf. Carroll Indep. Fuel Co. v. Wash. Real Estate Inv. Trust*, 202 Md. App. 206, 233, 32 A.3d 128, 144-46 (2011) (holding that, at the termination of a prime lease, the prime tenant is responsible for ensuring that a subtenant vacates the property). Therefore, the termination of the Prime Lease on December 31, 2008, extinguished Bird's interest in the Property under Sublease I. The termination of Sublease I on or before December 31, 2008, ended Bird's legal right to collect rent under Sublease II, long before Jiffy Lube ceased paying rent under Sublease II.

Consequently, Bird's claim for back rent for the months after August 2009, must be dismissed because, by that time, Bird no longer had a legally cognizable interest in the Property to enforce rent payments against Jiffy Lube. For the same reason, Bird's claim for rent through December 31, 2014, is also without merit.

2. *Breach of Sublease I*

In Count II, Bird alleges that Jiffy Lube, as Bird's landlord, breached the terms of Sublease I when it did not extend the Prime Lease. Jiffy Lube was not obligated to extend the Prime Lease for Bird's benefit. Therefore, this claim must fail.

As noted, the term of Sublease I expired "at midnight on the date before the last day of the term of the Prime Lease or on the earlier termination of the Prime Lease." Sublease I, ¶ 2. Paragraph 11 of Sublease I also provided:

> If (i) the Prime Lease contains one or more renewal options, and (ii) the last day for exercising any such renewal option occurs on or before the end of the Term, the Landlord agrees that, *if requested in writing to do so by Tenant at least 30 days before the last day on which such renewal option may be exercised*, it will give notice of exercise of the renewal option contained in such Prime Lease to the Prime Landlord within 15 days after Tenant's written request to do so and the Term shall automatically be extended for the

same period of time during which the term of the Prime Lease is extended as a result of Landlord's exercise of such renewal option.  (Emphasis added).

In Maryland, leases, as contracts, are construed according to the principles of contract interpretation. *Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 65, 849 A.2d 63, 78 (2004) (citing *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 166, 829 A.2d 540, 546 (2003)).  Maryland follows an objective theory of contract interpretation, under which the court's duty is to determine the intention of the parties as reflected in the terms of the contract.  *Sy-Lene*, 376 Md. at 166, 829 A.2d at 546.  "When a contract's language is expressed in clear and unambiguous terms, the court will not engage in construction, but will look solely to what was written as conclusive of the parties' intent."  *Middlebrook*, 376 Md. App. at 66, 849 A.2d at 79 (citing *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298 (1996)).

A contract does not become ambiguous merely because the parties do not agree on its meaning.  *Fultz v. Shaffer*, 111 Md. App. 278, 299, 681 A.2d 568, 578 (1996).  Rather, a contract is ambiguous only "if it is subject to more than one interpretation when read by a reasonably prudent person."  *Sy-Lene*, 376 Md. at 167, 829 A.2d at 547.  Whether a contract is ambiguous, and the interpretation of any unambiguous language, is a question of law for the court.  *Id.* at 163, 829 A.2d at 544; *see also Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 234 (4th Cir. 2007).

In my view, there is no ambiguity in the contractual language of Sublease I.  Based on the unambiguous contractual language of Sublease I, Bird's submission of a written request to extend the Prime Lease was a condition precedent to Jiffy Lube's obligation to exercise Jiffy Lube's renewal option under the Prime Lease.  *See Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555, 557 (1973) (discussing creation of a condition precedent) (citations omitted).  The

word "if" is "commonly used to indicate that performance [of a contractual obligation] has expressly been made conditional." *Id.* (citations omitted). When an express condition is left unsatisfied, the corresponding contractual duty does not arise. *B & P Enters. v. Overland Equipment Co.*, 133 Md. App. 583, 606-607, 758 A.2d 1026, 1038 (2000). Based on the unambiguous contractual language, the renewal provisions of Sublease I created a condition precedent: Jiffy Lube agreed to extend the Prime Lease "*if* requested in writing to do so by Tenant."

As Jiffy Lube notes, Bird's Complaint fails to allege that it submitted such a request in writing. And, if no notice was given, Jiffy Lube was under no obligation to extend the Prime Lease or Sublease I. In the absence of a written request, Jiffy Lube's decision not to extend the Prime Lease had the effect of terminating Sublease I, but would not constitute a breach.

Nevertheless, Bird adopts the position that Sublease I should have extended automatically, regardless of Bird's failure to request the extension, because Bird "was *entitled to expect* that the lease would automatically renew by its terms." ECF 15-1 at 5 (emphasis added). Further, Bird asserts that, as a result, the notice provision in Sublease I should not be read to require "Bird Realty to give notice of its intention to exercise a renewal option," but rather as a provision "mandating that [Jiffy Lube] follow Bird Realty's directions regarding the renewal." ECF 15-1 at 5. This argument lacks any basis in law or fact.

Bird was not a party to the Prime Lease between Northway and Jiffy Lube. Therefore, it could only have rights under the automatic extension provision of the Prime Lease as a third-party beneficiary. *See Dickerson v. Longoria*, 414 Md. 419, 452, 995 A.2d 721, 742 (2010) ("Despite the fact that a third-party beneficiary is not a party to the contract, he or she can bring suit to enforce the contract."); *Yaffe v. Scarlett Place Residential Condo., Inc.*, 205 Md. App.

429, 442, 45 A.3d 844, 851 (2012) (explaining that a party without contractual privity may only enforce a contract as a third-party beneficiary). Although a third-party beneficiary may assert a claim for breach of contract where "the contract was expressly made for the plaintiff's benefit and . . . the plaintiff was intended to be the primary beneficiary of the contract," *Parlette v. Parlette*, 88 Md. App. 628, 640, 596 A.2d 665, 671 (1991), Bird does not contend that it was a third-party beneficiary to the Prime Lease.

In any event, such a contention would be unfounded. To ascertain whether Bird enjoys third-party beneficiary status, the intention of the parties is "determined primarily from the language of the instrument, although that intention may be informed by the surrounding circumstances." *Gray & Son, Inc. v. Md. Deposit Ins. Fund Corp.*, 83 Md. App. 584, 593, 575 A.2d 1272, 1276 (1990). The intention must be clearly manifest. *See Yaffe*, 205 Md. at 442, 45 A.3d at 851 ("[I]t must clearly appear that the parties intend to recognize him as the primary party in interest and as privy to the promise.") (quoting *Mackubin v. Curtiss-Wright Corp.*, 190 Md. 52, 58, 57 A.2d 318 (1948)). Here, neither the language of the relevant lease agreements, nor the surrounding circumstances, clearly supports Bird's contention. To illustrate, the Prime Lease does not identify Bird or any other subtenant by name. And, critically, Sublease I was not signed until well over a year after the Prime Lease began, leaving little basis to conclude that Bird was in the picture at the time the Prime Lease was signed. Consequently, there is no basis to conclude that Bird was the intended beneficiary of the Prime Lease or its renewal provision.

In sum, Bird has failed to state a claim for breach of Sublease I, because Jiffy Lube was not obligated to extend the Prime Lease for Bird's benefit, in the absence of the requisite written notice. I will, however, grant leave to amend Count II, in the event that plaintiff is able to aver that the requisite written notice was provided.

   3. *Tortious Interference with Prospective Economic Advantage*

Bird alleges that, by terminating the Prime Lease, Jiffy Lube tortiously interfered with a prospective economic advantage held by Bird. According to Bird, if not for the termination of the Prime Lease, Bird could have continued to lease the Property to other interested parties.

Tortious interference with a prospective economic requires that the plaintiff prove "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628-29, 831 A.2d 49, 53 (2003) (quoting *Willner v. Silverman*, 109 Md. 341, 355, 71 A. 962, 964 (1909)). Notably, liability will only attach to an interference that is either "wrongful or unlawful." *Travelers Indem. Co. v. Merling*, 326 Md. 329, 343, 605 A.2d 83, 90 (1992) (citation omitted); *Gabaldoni v. Wash. Cnty. Hosp. Ass'n.*, 250 F.3d 255, 263 (4th Cir. 2001) (citing *Travelers*, 326 Md. at 343, 605 A.2d at 90). Moreover, "to establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference." *Med. Mut. v. B. Dixon Evander & Assocs.*, 339 Md. 41, 54, 660 A.2d, 433, 439 (2009). Although, as a general matter, "wrongful conduct is incapable of precise definition," it is well established that when a party acts within its rights, that conduct is not wrongful "as a matter of law." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301-02, 639 A.2d 112, 119 (1994) (citing *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 765, 511 A.2d 492, 498 (1986)).

The facts as alleged by Bird do not constitute "wrongful" termination of the Prime Lease by Jiffy Lube. As discussed above, if Bird did not properly notify Jiffy Lube of its intention to

extend the Prime Lease, Jiffy Lube was well within in its right to terminate the Prime Lease. The unspecified harm of which Bird complains would be the result of its own failure to protect its interests under Sublease I. And, as noted, Bird has failed to allege that it gave the required notice. More important, Bird has failed to allege facts suggesting that Jiffy Lube's decision to terminate the Prime Lease was in any sense intended to interfere with or destroy Bird's business relationship with a future tenant, inexistent at that juncture. Consequently, any alleged damage suffered by Bird is not recoverable under a theory of tortious interference with a prospective economic advantage. It follows that Count III must be dismissed.

*4. Breach of Fiduciary Duty*

Bird's final claim is that Jiffy Lube, in holding the legal authority to extend the Prime Lease for Bird's benefit, was Bird's agent in that capacity, and owed Bird a fiduciary duty to extend the Prime Lease on Bird's behalf. In particular, Bird argues that an agency relationship was created by Sublease I, and specifically by the provision requiring Jiffy Lube to extend the Prime Lease at Bird's request. *See* Compl. ¶¶ 27-28. Plaintiff's allegations fail to state a claim under Count IV. Contrary to Bird's characterization, there is no basis to establish that Jiffy Lube was Bird's agent in regard to an extension of the Prime Lease, and thus there is no basis to find a fiduciary duty.

In *Kann v. Kann*, 344 Md. 689, 690 A.2d 509 (1997), the Maryland Court of Appeals held that "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Id.* at 713, 690 A.2d at 521. In other words, "although the breach of fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty." *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*, 369 Md. 724, 727 n.1, 802 A.2d 1050, 1051 n.1 (2002). As *Kann*

made clear, however, "this does not mean that there is no cause of action available for the breach of a fiduciary duty." 344 Md. at 713, 690 A.2d at 521. Thus, the breach of a fiduciary duty "can be a component of a cause of action—but it cannot be a cause of action standing alone." *McGovern v. Deutsche Post Global Mail, Ltd.*, Civ. No. JFM-04-0060, 2004 WL 1764088 at * 11 (D. Md. Aug. 4, 2004) (discussing *Kann*, 344 Md. at 713, 690 A.2d at 521, and collecting cases).

To be sure, "[c]ourts have not entirely agreed on how to interpret the language of *Kann*." *Id.* But, I need not reach a conclusive interpretation of the case law here because, under any viable interpretation, Count IV fails to state claim.

In paragraph 27 of the Complaint, Bird alleged: "Pursuant to Section 11 of [Sublease I], Defendant was Plaintiff's agent for the purpose of extending or terminating the term of the [Prime Lease]. As an agent, Defendant owed a duty to Plaintiff." Bird insists that Jiffy Lube breached its fiduciary duty because, under Sublease I, Jiffy Lube was Bird's agent, and was obligated to renew the Prime Lease for Bird's benefit. Opp. at 8-9 ("JLI was Bird Realty's agent for the purposes of renewal of the Prime Lease and breached its fiduciary duty, however limited. . . . Paragraph 11 of [Sublease I] clearly creates an agency relationship in that JLI contractually agreed . . . to comply with Bird Realty's instructions regarding the renewal of the lease term."). However, the facts as alleged fail to show that, at the relevant time, Jiffy Lube was Bird's agent.

"'Agency is the fiduciary relation which results from the manifestation of consent by one person [the principal] to another [the agent] that the other shall act on his behalf and subject to his control and consent by the other so to act.'" *Ins. Co. of N. Am. v. Miller*, 362 Md. 361, 373, 765 A.2d 587, 593 (2001) (quoting *Green v. H & R Block, Inc.*, 355 Md. 488, 503, 735 A.2d 1039, 1047 (1999)). The creation of an agency relationship turns on the parties' intentions, and

can be determined either by written agreement or by conduct.  *See Green*, 355 Md. at 503, 735 A.2d at 1047; *Patten v. Bd. of Liquor License Comm'rs for Balt. City*, 107 Md. App. 224, 238, 667 A.2d 940, 947 (1995).

Bird's claim lacks the essential ingredient necessary to create an agency relationship, *i.e.*, "the manifestation of consent by the principal to the agent that the agent shall act on the principal's behalf and subject to his control and consent, by the agent, so to act." *Homa v. Friendly Mobile Manor, Inc.*, 93 Md. App. 337, 359, 612 A.2d 322, 333 (1992).  At most, Jiffy Lube agreed to extend the Prime Lease on Bird's behalf *only* "if requested in writing to do so." Sublease I ¶ 11.  Thus, Sublease I did not create a general "manifestation of consent" by either Bird or Jiffy Lube, because Jiffy Lube's manifestation of consent to act on Bird's behalf, and any fiduciary obligation that may have run with it, was entirely dependent on Bird's compliance with the written notice provision, as previously discussed.  Absent Bird's written request to extend Sublease I, Jiffy Lube owed no duty to Bird to obtain an extension of the Prime Lease.  By the same token, absent Bird's written notice, Bird failed to manifest consent for Jiffy Lube to act on its behalf in renewing the Prime Lease and Sublease I.  Accordingly, Count IV is dismissed, with leave to amend, in the event that plaintiff is able to aver that the requisite written notice was provided.

**Conclusion**

For the foregoing reasons, defendant's Motion to Dismiss (ECF 14) will be granted, with leave to amend Counts II and IV if Bird is able to aver that it satisfied the written notice provision of Sublease I ¶ 11. An Order consistent with this Memorandum Opinion follows.

Date: December 14, 2012  /s/
Ellen Lipton Hollander
United States District Judge