IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BIRD REALTY LIMITED
PARTNERSHIP,
    *Plaintiff,*

v.                         Civil Action No.: ELH-12-1104

JIFFY LUBE INTERNATIONAL,
INC.,
    *Defendant.*

**MEMORANDUM OPINION**

This case arose out of the termination of a multi-tiered real estate lease involving Bird

Realty Limited Partnership ("Bird Realty" or "Bird") and Jiffy Lube International ("JLI" or

"Jiffy Lube"), under which JLI, as a successor-in-interest, served as both the lessor to Bird of

real property located in Anne Arundel County, and the sublessee of that property from Bird.

Bird filed a Complaint in State court against JLI (ECF 2), which JLI removed to this Court (ECF

1). The suit contained four counts: breach of contract by JLI, in its capacities as tenant (Count I)

and as lessor (Count II); tortious interference with prospective economic advantage (Count III);

and breach of fiduciary duties (Count IV).[1] In a Memorandum Opinion ("Mem. Op.," ECF 21)

and Order (ECF 22) entered on December 14, 2012, I granted a motion to dismiss filed by JLI,

pursuant to Fed. R. Civ. P. 12(b)(6), dismissing Counts I and III with prejudice, and Counts II

and IV without prejudice and with leave to amend. No amended complaint was filed, however.

---

[1] The Court exercises diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

Thereafter, JLI filed a "Notice of Motion for Counsel Fees and Costs" (ECF 23), followed by a "Notice of Motion for Final Judgment Pursuant to Federal Rule of Civil Procedure 58 and For Counsel Fees and Costs" ("Motion") (ECF 26), and a supporting memorandum ("Memo," ECF 26-1).[2] Bird Realty opposes the request for fees ("Opposition or "Opp.," ECF 27), and JLI has replied ("Reply," ECF 28).

In its Motion, JLI seeks an entry of final judgment under Fed. R. Civ. P. 54(c) and 58(d), "dismissing with prejudice and in its entirety the Complaint filed by Plaintiff Bird Realty." Motion at 1. JLI also seeks $59,277.98 in attorneys' fees and costs pursuant to a prevailing party provision in a "Land and Building Sublease,"[3] which, as discussed more fully, *infra*, governed JLI's sublease of the subject property from Bird Realty. *See id.*; Reply at 9.

The issues have been fully briefed, and no hearing is necessary to resolve the matter. *See* Local Rule 105.6. For the reasons that follow, I will grant JLI's Motion, but not in the requested amount. Instead, I will award $30,635.48 in attorney's fees and costs.

## Factual Background

On March 28, 1988, Jiffy Lube International of Maryland ("JLIM"), as tenant, entered into a lease agreement (the "Prime Lease") with Northway Limited Partnership ("Northway"), as owner, for a 22,575 square foot property located near the intersection of former Maryland Route 3, now Veterans Highway, and Old Mill Road in Anne Arundel County, Maryland (the "Property"). Compl. ¶ 5; *see* Prime Lease, Compl. Exh. A (ECF 2-1). The Prime Lease

---

[2] The Motion filed as ECF 26 incorporates and expands upon all of the issues raised by JLI in ECF 23. Therefore, I will treat ECF 26 as the operative filing.

[3] The Land and Building Sublease is not included with JLI's Motion. However, it was attached as an exhibit to the Complaint. *See* Compl. Exh. C (ECF 2-1).

provided for a twenty-year term, beginning on "the first month following the date Tenant opens for business," and terminating "twenty (20) years after the Rent Commencement Date unless sooner terminated in accordance with the provisions hereof." *See* Prime Lease ¶ 4.A. The "Rent Commencement Date" was defined in the Prime Lease as "the earlier to occur of (i) the date Tenant commences business operations at the Premises, or (ii) July 1, 1988." *See* Prime Lease ¶ 1.F. The Prime Lease further provided for two five-year extensions unless, at least six months prior to expiration of the Prime Lease, Jiffy Lube provided Northway with written notice of termination. *Id.* ¶ 4.B.

JLIM subleased the Property to Bird (the "Prime Sublease") on December 1, 1989. Compl. ¶ 9; *see* Prime Sublease, Compl. Exh. B (ECF 2-1). In many respects, the provisions of the Prime Sublease mirrored those of the Prime Lease, a copy of which was attached to the sublease agreement. *See* Prime Sublease ¶ 1(d). The Prime Sublease was to begin on December 1, 1989, and extend until "midnight on the day before the last day of the term of the Prime Lease or the earlier termination of the Prime Lease." *Id.* ¶ 2. Further, the Prime Sublease provided that, if "the Prime Lease contains one or more renewal options," JLIM would exercise its option to renew "if requested in writing to do so by Tenant at least 30 days before the last day on which such renewal option may be exercised." *Id.* ¶ 11. The Complaint did not allege that such notice was provided, written or otherwise.

Also on December 1, 1989, Bird subleased the Property to J&R Lube ("J&R"), a Jiffy Lube franchisee, so that J&R could operate a "Jiffy Lube Service Center" on the premises. *See* Land & Building Sublease, Compl. Exh. C (ECF 2-1). The term of the Land and Building Sublease was for "a period of twenty (20) years from the Lease Commencement Date, unless

sooner terminated as herein provided or permitted." *Id.* ¶ 4. The "Lease Commencement Date" was defined as "the date on which the Leased Premises are ready for occupancy," *id.* ¶ 4, which Bird alleged was during the month of December 1989. In addition, the Land and Building Sublease provided for two five-year extensions, unless J&R otherwise notified Bird at least 180 days prior to the expiration of the term. *Id.* ¶ 6.

On May 24, 1991, Jiffy Lube International of Tennessee ("JLIT") assumed the obligations of J&R under the Land and Building Sublease. Compl. ¶ 13; *see* Compl. Exh. D (ECF 2-1). JLIT then merged with JLI, making JLI the successor-in-interest to the Land and Building Sublease. Compl. ¶ 13. JLIM also merged with JLI, making JLI the successor-in-interest to the Prime Lease and the Prime Sublease. Compl. ¶ 4; Memo at 2-3. As a result of the various leases, subleases, and mergers, the interest in the Property ran from Northway to JLI (pursuant to the Prime Lease), from JLI to Bird Realty (pursuant to the Prime Sublease), and from Bird Realty back to JLI (pursuant to the Land and Building Sublease).

In a letter dated June 24, 2008, JLI notified Northway (now AG/Spectrum Northway, L.L.C.) of its decision not to extend the Prime Lease beyond December 31, 2008. Compl. ¶ 20; Compl. Exh. E (ECF 2-1). For reasons not entirely clear from the record, notwithstanding JLI's written termination of the Prime Lease, it continued to make rent payments to Bird through August 2009. *See* Compl. ¶ 6. Payments ceased in September 2009, and Bird subsequently filed suit.

## Procedural History

As indicated, Bird Realty's Complaint contained four counts.

In Count I, Bird alleged that JLI, as tenant, wrongfully breached the Land and Building Sublease by failing to pay rent through the end of the term, December 2009, and that, under the automatic renewal provision, JLI was is obligated to pay rent on the Property until December 31, 2014. *See* Compl. ¶¶ 14-16. Pursuant to Fed. R. Civ. P. 12(b)(6), I dismissed Count I because "Bird's interest in the property under [the Prime Sublease] expired with the termination of the Prime Lease, leaving Bird no legal basis through which to enforce rent payments against Jiffy Lube." Mem. Op. at 8. More specifically, "the termination of the Prime Lease on December 31, 2008, extinguished Bird's interest in the Property under [the Prime Sublease]," which, in turn, "ended Bird's legal right to collect rent under [the Land and Building Sublease], long before Jiffy Lube ceased paying." *Id.* at 10. Therefore, "Bird no longer had a legally cognizable interest in the Property to enforce rent payments against Jiffy Lube" as to the post-August 2009 time period, for which it claimed rent was owed. *Id.*

In Count II, Bird alleged that, as lessor, JLI breached the terms of the Prime Sublease when it terminated the Prime Lease with Northway, thereby "prematurely" ending Bird's interest in the Property. Compl. ¶¶ 20-21. I dismissed this claim because "Jiffy Lube was not obligated to extend the Prime Lease for Bird's benefit." Mem. Op. at 13. In particular, I determined that the Prime Sublease required a written request from Bird to JLI to renew the Prime Lease, as a condition precedent to JLI's obligation to do so. *See id.* at 11-12. Because JLI had not alleged that it provided the requisite written notice, I concluded that Bird had failed to state a claim for breach of the Prime Sublease. *Id.* at 12-13. As noted, although I granted leave to amend, Bird did not amend the Complaint.

In Count III, Bird alleged that Jiffy Lube's termination of the Prime Lease precluded Bird from subleasing the Property to other parties, and therefore Jiffy Lube was liable for tortious interference with prospective economic advantage. Compl. ¶¶ 24-25. Again, I found that Bird failed to state a claim. As I explained, "Bird did not properly notify Jiffy Lube of its intention to extend the Prime Lease," and therefore "Jiffy Lube was well within in its right to terminate the Prime Lease." Mem. Op. at 15. Additionally, Bird "failed to allege facts suggesting that Jiffy Lube's decision to terminate the Prime Lease was in any sense intended to interfere with or destroy Bird's business relationship with a future tenant, inexistent at that juncture." *Id.* at 15. Therefore, I dismissed Count III, with prejudice.

Finally, in Count IV, Bird alleged that Jiffy Lube's termination of the Prime Lease was in breach of a fiduciary duty it owed to Bird to extend the Prime Lease. Compl. ¶ 28. I found that Count IV failed to state a claim because "Jiffy Lube was not Bird's agent in regard to an extension of the Prime Lease, and thus there is no basis to find a fiduciary duty." Mem. Op. at 15. In particular, I stated: "[A]bsent Bird's written request, Bird failed to manifest consent for Jiffy Lube to act on its behalf in renewing the Prime Lease and Sublease I." *Id.* at 17. Therefore, I dismissed Count IV, with leave to amend. Again, no amendment was filed.

## Discussion

### I. *Dismissal with Prejudice*

Plaintiff's Complaint was dismissed in mid December 2012, with leave to amend as to Counts II and IV. Plaintiff had until January 18, 2013, to amend. *See* ECF 25. As no amended complaint was ever filed, plaintiff's Complaint is dismissed in its entirety, with prejudice.

### II. *Attorneys' Fees*

According to JLI, the Land and Building Sublease contractually entitles JLI to attorneys'

fees and expenses incurred in defending against Bird Realty's Complaint.  Paragraph 17(d) of the

Land and Building Sublease states, in pertinent part[4]:

> If it shall become necessary for either Landlord or tenant to employ
> counsel to enforce any term, covenant or provision of this Lease, or to defend any
> action brought by the other party in connection with this Lease or otherwise, then
> . . . the non-prevailing party in such an action agrees to pay any reasonable
> attorneys' fees and expenses incurred by the prevailing party.

"'[I]n an ordinary diversity case where the state law does not run counter to a valid

federal statute or rule of court, . . . state law denying the right to attorney's fees or giving a right

thereto, which reflects a substantial policy of the state, should be followed.'"  *Alyeska Pipeline*

*Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975) (quoting 6 J. Moore, FEDERAL

PRACTICE § 54.77(2), at 1712-1713 (2d ed. 1974)).  In *Alyeska*, the Supreme Court stated that a

forum state's "judicially created rule" as to attorney's fees will be applied by a federal court

sitting in diversity.  *Alyeska*, 421 U.S. at 259 n.31.  Both Maryland and the Fourth Circuit apply

the American Rule.  *See, e.g*, *United Food & Comm. Workers, Local 400 v. Marvel Poultry Co.*,

876 F.2d 346, 350 (1989) ("Without . . . express contractual or statutory authorization, courts

generally adhere to the American Rule which requires each party to bear its own litigation costs,

including attorney's fees."); *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006)

("Contract provisions providing for awards of attorney's fees to the prevailing party in litigation

under the contract generally are valid and enforceable in Maryland.").

---

[4] The page containing Paragraph 17(d) is not included in the copy of the Land and
Building Sublease filed by Bird Realty with the Complaint.  However, Bird Realty does not
dispute JLI's contention that this provision is contained in paragraph 17(d).

Under the "American Rule," a "prevailing party is not awarded attorney's fees 'unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.'" *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445, 952 A.2d 275, 281 (2008) (quoting *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434, 437 (2005)).

In its cursory, two-page Opposition, Bird Realty asserts that the language of Paragraph 17(d) does not encompass all of its claims against JLI. Although Bird Realty does not dispute that Count I of the Complaint is covered under Paragraph 17(d), it claims: "The remaining three (3) Counts of the Complaint are based on, and arise solely out of, the Prime Sublease . . . between JLI, as Landlord, and Bird, as Tenant. The Prime Sublease contains no fee-shifting provisions, and therefore the American Rule as to attorney's fees is applicable to those Counts." Opp. ¶ 2. Further, Bird Realty contends: "JLI has failed to allocate its fees and costs or account for the time expended with respect to the defense of the various causes of action and as a consequence the Court cannot possibly determine the amount, if any, properly allocable to Count I, the only Count to which the fee-shifting provision contained in Section 17(d) of the Land and Building Lease Agreement applies." *Id.* ¶ 3. And, it asserts that "the amount of fees and expenses sought by JLI . . . is excessive given the nature of these proceedings, the short duration of the case and the matters at issue." *Id.* ¶ 4.

JLI counters that, "due to the interdependent nature of Bird Realty's claims, JLI was required to globally address and defend all counts of the Complaint in its motion to dismiss." Reply at 1. Moreover, JLI urges that the plain language of paragraph 17(d) unambiguously

encompasses all of Bird Realty's claims, which were brought "in connection with" the Land and Building Sublease. *Id.* at 3. In particular, JLI observes that the Land and Building Sublease "was entered into subsequent to the Prime Lease and concomitantly with the Prime Sublease, upon which the Land and Building Sublease was dependent." *Id.* at 3-4. Finally, JLI claims that its fee request is reasonable in light of the result, *id.* at 4-6, and that Bird Realty cannot object to the amount of the fees without "specifying 'with particularity the basis for [its] objections.'" *Id.* at 6 (quoting *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *9-10 (D. Md. Nov. 21, 2002).

A. Paragraph 17(d)

The parties agree that Maryland law governs interpretation of the Land and Building Sublease. In a diversity case, such as this one, a court applies the choice-of-law rules of the forum state. As to contract actions, Maryland courts ordinarily apply the law of the jurisdiction where the contract was made, under the principle of *lex loci contractus*. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007). Further, "[c]ontracts relating to the sale of realty are generally governed by the law of the jurisdiction in which the property is located." *Traylor v. Grafton*, 273 Md. 649, 660, 332 A.2d 651, 659 (1975). The Land and Building Sublease was made in Maryland, where the Property is located.

The dispute over the scope of Paragraph 17(d) presents an issue of contract interpretation. Maryland follows an objective theory of contract interpretation, under which "[t]he court's duty is to determine the intention of the parties as reflected in the terms of the contract." *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, Inc.*, 376 Md. 157, 166, 829 A.2d 540, 546 (2003). Moreover, "'[t]he words employed in the contract are to be given their ordinary and usual

meaning, in light of the context within which they are employed.'" *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 313, 829 A.2d 626, 632-33 (2003) (quoting *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620, 630 (2001)).

"'[W]here the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court.'" *DIRECTV*, 376 Md. at 312, 829 A.2d at 632 (citations omitted); *see Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298 (1996)).  Put another way, "the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean." *Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444 (1999).  Indeed, "[i]t is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calormis v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (quoting *Canaras v. Lift Truck Servs.*, 272 Md. 337, 350, 322 A.2d 866, 873 (1974)); *see Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 1443, 1992 WL 145269, at *5 (4th Cir. 1992) (per curiam) ("[A] court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck."). Nor will a court "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *Brensel v. Winchester Constr. Co.*, 392 Md. 601, 624, 898 A.2d 472, 485 (2006).

"Further, a contract does not become ambiguous merely because the parties do not agree on its meaning." *Fultz v. Shaffer*, 111 Md. App. 278, 299, 681 A.2d 568, 578 (1996).  Rather, a contract is ambiguous only "if it is subject to more than one interpretation when read by a

reasonably prudent person." *Sy-Lene*, 376 Md. at 167, 829 A.2d at 547. Whether a contract is ambiguous, and the interpretation of any unambiguous language, is a question of law for the court. *Id.* at 163, 829 A.2d at 544; *see also Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 234 (4th Cir. 2007).

As noted, Paragraph 17(d) provides for an award of reasonable attorneys' fees and expenses to the prevailing party in "any action brought by the other party *in connection with* this Lease *or otherwise*." *See* Land & Building Sublease ¶ 17(d) (emphasis added). This broad language unambiguously encompasses all of Bird Realty's claims against JLI. As discussed briefly, *supra*, and more thoroughly in my earlier Memorandum Opinion (ECF 21), each of Bird Realty's claims stemmed from its multi-tiered landlord-tenant relationship with JLI. The claims involved a common core of facts and interrelated legal theories, including Bird's right to enforce the Land and Building Sublease against JLI. As JLI persuasively argues, "due to the interdependent nature of Bird Realty's claims, JLI was required to globally address and defend all counts of the Complaint in its motion to dismiss." Reply at 1. In other words, even though Counts II through IV did not allege a breach of the Land and Building Sublease, "JLI could not simply extricate and address the claims concerning the Land and Building Sublease." *Id.* at 2.

Bird Realty offers no legal authority or factual support for its conclusory assertion that Paragraph 17(d) encompasses solely its action for breach of the Land and Building Sublease. Rather, Bird simply asks the Court to ignore the breadth of the phrase "in connection with the Lease or otherwise," in favor of an interpretation of Paragraph 17(d) that is more advantageous to Bird. Such a result would be contrary to the rule that courts should not "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *See*

*Brensel*, 392 Md. at 624, 898 A.2d at 485. As noted, "a court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck." *Loudin*, 1992 WL 145269, at *5.

I am persuaded that each claim was brought "in connection with" the Land and Building Sublease "or otherwise." *Cf. Stratakos v. Parcells*, 172 Md. App. 464, 477, 915 A.2d 1022, 1029 (2007) (holding that misrepresentation claims by buyers of real property against the sellers "arose out of" the party's contract of sale, thereby triggering the contract's attorneys' fees provision, because "[a]bsent the contract for the sale of real property, [the buyers'] claims of misrepresentations and breach of warranty simply could not have existed"). The plain language of the Land and Building Sublease encompasses each of Bird Realty's claims. Therefore, JLI is entitled to reasonable attorneys' fees as the prevailing party, and I need not resolve plaintiff's contention that JLI was obligated to allocate fees and costs on a "per claim" basis.

B. Award of Legal Fees and Costs

I next consider the amount of the award of legal fees.

Because the award of attorneys' fees is governed by Maryland law, my analysis as to the amount is guided by the method employed by Maryland courts in calculating the award of attorney's fees. *See Kiran M. Dewan, CPA, P.A. v. Walia*, Civ. No. RDB-11-02195 2012 WL 4963827, at *3 (D. Md. Oct. 16, 2012) (relying on factors used by Maryland courts to calculate reasonable award of attorneys' fees in breach of contract action brought under Maryland law); *Kiddie Academy Domestic Franchising, LLC v. Faith Enters. DC, LLC*, Civil No. WDQ-07-0705, 2010 WL 673112, at *7 (D. Md. Feb. 22, 2010) ("'In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual awarding of attorneys'

fees but also the method of determining those fees.'") (Citation omitted); *accord N. Heel Corp.*

*v. Compo Indus., Inc.*, 851 F.2d 456, 475 (1st Cir. 1988) ("Inasmuch as the quest for attorneys'

fees in this case comprised a substantive part of the state-law remedy for a state-law cause of

action, the proper rule of decision governing the award should have been derived from [state],

rather than federal, practice."); *Blanchette v. Cataldo*, 734 F.2d 869, 878 (1st Cir. 1984)

("[W]here an award of fees or costs rests on state law, state law also controls the method of

calculating the size of the award.").

Maryland courts ordinarily utilize the "lodestar" approach when determining attorneys'

fees under fee-shifting statutes. *Friolo v. Frankel*, 373 Md. 501, 504-05, 819 A.2d 354, 356

(2003) ("*Friolo I*").[5]   However, the Maryland Court of Appeals has held that the lodestar

approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-

shifting provisions in "disputes between private parties over breaches of contract."  *Monmouth*

*Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 336, 7 A.3d 1, 7 (2010).  This is

because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . .

Thus, it usually serves no larger public purpose than the interests of the parties."  *Congressional*

─────────────────

[5] The *Friolo* litigation has spawned four reported opinions of the Maryland appellate courts, all dealing with issues concerning the award of attorneys' fees.  *See Frankel v. Friolo*, 170 Md. App. 441, 907 A.2d 363 (2006) ("*Friolo II*") (holding that, when applying the lodestar approach, a court must provide a "clear explanation of the factors employed"), *aff'd*, 403 Md. 443, 942 A.2d 1242 (2008) ("*Friolo III*") (holding that an award of attorneys' fees under a fee-shifting statute should include "appellate fees . . . incurred in successfully challenging . . . the attorneys' fee awarded"); *Friolo v. Frankel*, 201 Md. App. 79, 28 A.3d 752 (2011) ("*Friolo IV*") (holding that award of attorneys' fees could be apportioned based on the litigant's degree of success, determined by comparing amount of the jury verdict with amount sought and the defendant's settlement offer), *cert. granted*, 424 Md. 54, 33 A.3d 981, No. 394, Sept. Term 2011 (Dec. 16, 2011).  After a writ of certiorari was granted in *Friolo IV*, "a subsequent bankruptcy filing stayed further litigation of the case." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 165 n.24, 59 A.3d 1016, 1028 n.24 (2013).

*Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505, 28 A.3d 75, 84 (2011).

"Even in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Myers*, 391 Md. at 207, 892 A.2d at 532; *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316, 844 A.2d 460, 478 (2004); *SunTrust*, 201 Md. App. at 401, 29 A.3d at 730. Thus, "courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award." *Monmouth Meadows*, 416 Md. at 333, 7 A.3d at 5. The "reasonableness of attorney's fees is a factual determination within the sound discretion of the court." *Myers*, 391 Md. at 207, 892 A.2d at 532.

"'The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" *Ulico*, 380 Md. at 316, 844 A.2d at 478 (citation omitted). Therefore, the party seeking a fee award must provide "'detailed records'" that specify "'the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged.'" *Rauch v. McCall*, 134 Md. App. 624, 639, 761 A.2d 76, 84 (2000) (citation omitted), *cert. denied*, 362 Md. 625, 766 A.2d 148 (2001). "'[W]ithout such records, the reasonableness, vel non, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.'" *Id.* at 639, 761 A.2d at 85 (citation omitted).

In regard to an award based on a contract, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")[6]] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows*, 416 Md. at 336-37, 7 A.3d at 8. Although the lodestar approach does not apply, cases decided under that approach can "provide helpful guidance" in contractual fee-shifting cases, *Congressional Hotel*, 200 Md. App. at 505, 28 A.3d at 85, because "there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis." *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8.

MRPC 1.5(a) enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee": [7]

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

---

[6] MRPC 1.5(a) is a standard of professional ethics, generally applicable to attorney-client relationships in Maryland. It mandates that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." *Id*.

[7] A list of factors similar to those in MRPC 1.5 was enunciated for use in a lodestar analysis in the seminal case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The so-called "*Johnson* factors" have been adopted for use in lodestar cases by the Fourth Circuit, *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), and in Maryland. *See Friolo I*, 373 Md. at 522 n.2, 819 A.2d at 366 n.2.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

"In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately." *SunTrust*, 201 Md. App. at 401, 29 A.3d at 730; *see Monmouth Meadows*, 416 Md. at 337 n.11, 7 A.3d at 8 n.11. Indeed, a court need not "make explicit findings with respect to Rule 1.5" at all, or even "mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness." *Monmouth Meadows*, 416 Md. at 340 n.13, 7 A.3d at 10 n.13. Moreover, when conducting an MRPC 1.5 analysis, a court "should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment. Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated." *Id*. at 337, 7 A.3d at 8. And, a "trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337-38, 7 A.3d at 8.

As indicated, JLI seeks $59,277.208 in attorneys' fees, expenses, and costs. In support of its request, JLI twice provided a "Certification of Counsel in Support of JLI's Motion for Counsel Fees and Costs," *see* ECF 26-2 ("Certification"); ECF 28-1 ("Supplemental Certification"). Both documents were signed by Daniel Fleming, Esq., Managing Partner and Vice President of Wong Fleming, P.C. ("Wong Fleming"), who was "primarily responsible" for the representation of JLI in this case. Certification ¶ 1. Detailed timesheets and billing records for the case are attached as exhibits to each document. *See* Certification Exh. A (statements summarizing fees); Supplemental Certification Exh. A (hourly timesheets and billing records).

Based on the factors outlined in the MRPC, I conclude that JLI is not entitled to the full

amount of its claim for legal fees. In particular, I decline to award fees for all four of the attorneys who worked on the matter for JLI.

Wong Fleming "concentrates its practice in the representation of commercial entities in complex commercial and contract litigation." Certification ¶ 3. According to "American Lawyer Media, publisher of the National Law Journal," the firm is "one of the Fortune 500's 'Go-To Law Firms' for contract litigation." *Id.* Four attorneys from Wong Fleming participated in the representation of JLI in this litigation, in addition to several paralegals.

Mr. Fleming expended a total of 92.2 hours over the course of his representation, for a total of $29,965 in fees. *See* Certification ¶ 11; Supplemental Certification ¶ 5. Mr. Fleming has "been licensed in and practicing law in Maryland since 1985." Certification ¶ 4. His "regular hourly rate is $450" but, at JLI's request, he "maintained an hourly billable rate of $325" in this matter. *Id.* This hourly rate is presumptively reasonable for an attorney admitted to the bar for fifteen years or more, pursuant to this Court's Local Rules. *See* Local Rules, App. B, Guideline 3; *see also Poole v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000) (noting that Appendix B to the Local Rules "provide[s] a presumptively reasonable range of hourly rates"); *accord Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

Linda Wong, Esq., a "co-founder of the firm and [the] CEO," billed a total of 0.5 hours in this case. Certification ¶¶ 5, 11. She has "been practicing law since 1982," and "normally bills at the hourly rate of $450." *Id.* ¶ 5. In this case, however, she "billed at the reduced of $325," *id.*, a reasonable rate for lawyers admitted to the bar for fifteen years or more, under Appendix B of this Court's Local Rules. For her work in this matter, Ms. Wong billed $162.50. *Id.* ¶ 11.

Grant Wright, Esq., an associate at Wong Fleming, billed 126.7 hours, for a total of

$26,607. *Id.* ¶¶ 6, 13; Supplemental Certification ¶ 6. Mr. Wright "has been licensed and practicing since 2004." Certification ¶ 6. He "is normally billed out at the hourly rate of $285" but, at the request of JLI, billed at an hourly rate of $210. *Id.* This hourly rate is reasonable for lawyers admitted to the bar for five to eight years, under Appendix B of this Court's Local Rules.

Mark Thompson, Esq., also an associate at the firm, billed 4.3 hours for a total of $903. *Id.* ¶¶ 7, 14. Mr. Thompson "has been licensed and practicing since 2004." Certification ¶ 7. Like Mr. Wright, he "is normally billed out at the hourly rate of $285" but, at the request of JLI, billed at an hourly rate of $210. *Id.* This hourly rate is reasonable for lawyers admitted to the bar for five to eight years, under Appendix B of this Court's Local Rules.

Additionally, paralegals at Wong Fleming expended 9.7 hours on this case, at an hourly billing rate of $100, for a total of $970. Certification ¶ 15. This hourly rate is presumptively reasonable for paralegals under this Court's Local Rules.

Bird opposes the amount of fees claimed by JLI on the ground that they are "excessive given the nature of these proceedings, the short duration of the case and the matters at issue," but offers no arguments as to the particular fees that it believes should be reduced. Opp. ¶ 4.

To be sure, counsel provided competent legal representation for JLI, and JLI prevailed on its motion to dismiss. Certainly, "the degree of success obtained" is "the most critical factor" in determining an award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (same); MRPC 1.5(a)(4) (considering the result obtained).

However, as indicated, in determining a reasonable fee award, a court should also consider "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." MRPC 1.5(a)(1). I am mindful that

plaintiff pursued several legal claims that required JLI's attorneys to review multiple leases. Nonetheless, this was not a complex case. As JLI has noted, the claims all revolved around the same nucleus of facts and interrelated legal issues. JLI filed only two briefs addressing the merits of the case, there was no discovery, and no hearings were held. Additionally, the law was squarely on the side of JLI.

In sum, this was not a case requiring the work of more than one attorney, especially given Mr. Fleming's extensive experience and Wong Fleming's particular expertise in contract litigation. Yet, JLI's billing records indicate that counsel frequently engaged in duplicative tasks, often on the same day. In particular, Mr. Fleming and Mr. Wright each spent significant time reviewing all of the lease documents; reviewing the pleadings; preparing, drafting and revising the motion to dismiss; reviewing Bird Realty's opposition to the motion; preparing, drafting and revising a reply for the motion to dismiss; and drafting and revising papers for the instant motions. *See generally* ECF 28-2. On May 3, 2012, for example, Mr. Fleming and Mr. Wright each spent at least four hours revising the motion to dismiss. *See id.* at 12. On May 21, 2012, they each spent at least four hours reviewing plaintiff's opposition to the motion to dismiss and preparing a reply. *See id.* at 15. These are but two examples of the frequent redundancies in counsel's work. An exhaustive recitation is not necessary – it is readily apparent that the unnecessary staffing of four attorneys on this case was the primary culprit in JLI's exceptionally high fee request.

Of course, Mr. Fleming was entitled to avail himself of the assistance of three attorneys and multiple paralegals for his representation of JLI. Such practices are not uncommon. And the client may have been well served by the work of multiple attorneys who exchanged ideas. As

the saying goes, two heads are often better than one. But, it is another matter altogether to require plaintiff to pay for such staffing, particularly given the evidence of considerable duplication or overlap in the work.

It is well established that a district court may exercise its discretion in reducing a fee award for a case that was overstaffed. *Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir. 1995) ("Properly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion."); MRPC 1.5(a)(1) (considering "time and labor required); *see Hensley*, 461 U.S. at 433 ("The district court . . . should exclude . . . hours that were not 'reasonably expended.' Cases may be overstaffed, and the skill and experience of lawyers vary widely."); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) ("[O]verstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees."); *see, e.g.*, *Hairston v. Prince George's Cnty.*, Civil No. PJM 09-3431, 2012 WL 5995451, at *4 (D. Md. Nov. 28, 2012) (reducing fees claimed by attorneys because, "[d]espite the case's straightforward nature, seventeen individuals show up in the billing records attached to [plaintiff's] fee petition, billing a total of 2,127 hours."); *Dause v. Broadway Servs., Inc.*, Civil No. JKB-11-3136, 2012 WL 1131524, at *2 (D. Md. Aug. 3, 2012) ("This was a one-lawyer case on the low end of the spectrum of complexity, but it was overstaffed so that an unreasonable number of hours have now been claimed as reimbursable by Plaintiff. This is particularly so given the years of experience each of the lawyers has had in litigating employment discrimination cases."); *Essex v. Randall*, No. Civ. A. DKC20033276, 2006 WL 83424, at *3 (D. Md. Jan. 11, 2006) (reducing fee award due to overstaffing).

Accordingly, I will award legal fees for the work of Mr. Fleming, but not for his colleagues. This amounts to $29,965. *See* Certification ¶ 11; Supplemental Certification ¶ 5.

Additionally, JLI incurred costs and expenses of $670.48, consisting of filing fees, postage/delivery fees, and research vendor expenses. *See* Certification ¶ 16. Fed. R. Civ. P. 54(d)(1) "creates the presumption that costs are to be awarded to the prevailing party." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). Although a "district court is given discretion to deny the award," *id.*, it must "justify its decision by 'articulating some good reason for doing so.'" *Teague v. Baker*, 35 F.3d 978, 996 (4th Cir. 1994) (quoting *Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990)). To justify a denial of an award of costs, there must be "an element of injustice," such as "their excessiveness in a particular case, the limited value of the prevailing party's victory, or the closeness and difficulty of the issues decided." *Cherry*, 186 F.3d at 446 (citing *Teague*, 35 F.3d at 966). Bird Realty has not opposed the Motion as to costs and expenses, and the request is reasonable.

Therefore, I will grant JLI's Motion and award a total of $30,635.48 in legal fees and costs.

An Order implementing this ruling follows.

Date: August 23, 2013

_____/s/_____
Ellen Lipton Hollander
United States District Judge